RECEIVED IN
COURT OF CRIMINAL APPEALS

APRIL 13, 2015

ABEL ACOSTA, CLERK

ORAL ARGUMENT REQUESTED

# No. PD-0186-15

*In the Court of Criminal Appeals*
*Austin, Texas*

**ROBERT LYNN PRIDGEN,**

*Petitioner / Appellant,*

**v.**

**THE STATE OF TEXAS,**

*Respondent / Appellee.*

On appeal from the 369th District Court, no. 29956,
Anderson County, Texas, and the Tyler Court of
Appeals, No. 12-13-00136-CR

## PETITION FOR DISCRETIONARY REVIEW

**James W. Volberding**
SBN: 00786313

First Place                              (903) 597-6622
100 E. Ferguson Street          (866) 398-6883 (fax)
Suite 500                               *e-mail: james@jamesvolberding.com*
Tyler, Texas 75702
Attorney for the Petitioner, Robert Lynn Pridgen

# No. PD-0186-15

*In the Court of Criminal Appeals*
*Austin, Texas*

---

**ROBERT LYNN PRIDGEN,**

*Petitioner / Appellant,*

**v.**

**THE STATE OF TEXAS,**

*Respondent / Appellee.*

---

On appeal from the 369th District Court, no. 29956,
Anderson County, Texas, and the Tyler Court of
Appeals, No. 12-13-00136-CR

---

## PETITION FOR DISCRETIONARY REVIEW

---

To the Honorable Court of Criminal Appeals:

Mr. Robert Lynn Pridgen, Petitioner, asks the Court to grant discretionary review, then acquittal or retrial of his murder conviction.

## THE PARTIES AND THEIR COUNSEL

The following is a list of all parties to the trial court's judgment and the names and addresses of all trial and appellate counsel:

*Petitioner*
Mr. Robert Lynn Pridgen

*Petitioner's Counsel*
Mr. James W. Volberding
First Place
100 E. Ferguson Street
Suite 500
Tyler, TX 75702
(903) 597-6622

*Petitioner's Trial Counsel*
Mr. Jeff Haas
100 E. Ferguson, Suite 908
Tyler, TX 75702

*State of Texas*

*State's Appellate Counsel*
Ms. Allyson Mitchell
Anderson County District
  Attorney
500 N. Church Street, Room 38
Palestine, TX 75801

*State's Trial Counsel*
Mr. Douglas Lowe
Mr. Stanley Sokolowski
Mr. Scott Holden
Anderson Co. Asst. District
  Attorneys

(Parties, cont.)

**_Judges_**

Hon. Deborah Oakes Evans, 369th District Court, Anderson County

Hon. Bascom W. Bentley, III, 369th District Court, Anderson County

**_Justices_**

Hon. Chief Justice James T. Worthen
Hon. Justice Sam Griffith
Hon. Justice Brian Hoyle

/s/ James W. Volberding

_____

James W. Volberding

# CONTENTS

The Parties and Their Counsel ............................................................ iii

Authorities.......................................................................................... vii

Statement Regarding Oral Argument ................................................. viii

Statement of Jurisdiction .................................................................. viii

Statement of the Case......................................................................... viii

Statement of Procedural History ..........................................................ix

Grounds For Review ..............................................................................1

Statement of Facts .................................................................................1

Argument.................................................................................................8

    Ground I. Albeit stating the proper standard, the appellate court
    erred by actually applying a constitutionally deficient and
    discredited standard of sufficiency review.  ........................................8

        A.     The court of appeals' favored items of proof did not come
               close to eliminating reasonable doubt. .......................... 10

        B.     The appellate court's analysis ignored undisputed facts
               inconsistent with murder…………………………........... 15

    Ground II.  In assessing the case for self-defense, the appellate court
    erred by applying an unconstitutional hindsight viewpoint as to
    whether deadly force was necessary. ..................................................18

    Ground III. The appellate court erred in holding that the decedent's
    photos of simulated sexual violence were inadmissible. .....................20

(Contents, cont.)

A. The photos are material to Pridgen's statutorily authorized defense…………………………………………………………………… 21

B. The photos are probative of self-defense…………………….. 22

C. The photographs speak loudly for themselves and 12 citizen jurors should be permitted to listen…………………………… 23

D. The appellate court undertook its own impermissible fact-weighing and credibility assessment………………………….24

Conclusion ....................................................................................25

Relief Sought ................................................................................26

Certificate of Compliance ............................................................27

Certificate of Service....................................................................27

Appendix........................................................................................28

Tyler Court of appeals opinion
*Pridgen v. State*, 2014 Tex. App.
LEXIS 12915 (Tex. App. --- Tyler
Dec. 3, 2014, pet. filed)…………………………………….…... A-1

Denied sexually explicit photographs by Rohne ………………… A-2

## AUTHORITIES

**CASES**

*Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010) ............17, 24, 25
*California v. Trombetta,* 467 U.S. 479 (1984) .........................................25
*Cooper v. State,* 95 S.W.3d 488 (Tex. App.---Houston [1st Dist.]
  2002, no pet.) .................................................................................22
*Craig v. Boren,* 429 U.S. 190 (1976) .....................................................23
*Crane v. Kentucky,* 476 U.S. 683 (1986) ...............................................25
*Holmes v. South Carolina,* 547 U.S. 319 (2006) ...................................25
*In re Winship*, 397 U.S. 358 (1970) ......................................................17
*Jackson v. Virginia,* 443 U.S. 307 (1979) ...................................14, 17, 18
*Miller v. State*, 36 S.W.3d 503 (Tex. Crim. App. 2001)............ 20, 22, 25

**STATUTE**

Tex. Penal Code § 9.32 (2011) ........................................................ 18-19

**RULES**

Tex. R. Crim. Evid. 401........................................................................20
Tex. R. Crim. Evid. 402........................................................................20

## STATEMENT REGARDING ORAL ARGUMENT

The Court will benefit from oral argument. This fact-intensive murder/self-defense case pivots on two concepts. First, the case delineates the difference between the constitutionally mandated beyond-reasonable-doubt review standard of *Jackson v. Virginia* and the lower, forbidden civil-sufficiency standard. The court of appeals clearly applied the latter standard. But it never understood it was doing so, a mistake subject to repetition. Second, the case explores the legal framework for admitting pre-incident photos of simulated sexual violence. The jury was explicitly charged to consider evidence of the decedent's sexual assault on defendant Pridgen. The photos would have corroborated Pridgen's protest that the decedent carried a knife and intended sexual assault. When they were excluded, Pridgen was denied the ability to prove self-defense.

The decision in this case will affect scores of similar murder/self-defense appeals. This appears to be the first case addressing whether admission of intended rape evidence requires proof that the rapist was of the same gender.

## STATEMENT OF JURISDICTION

This Court possesses jurisdiction under Texas Constitution Art. V, §§ 1, 5 and Tex. Gov't Code § 22.201, *et seq.*

## STATEMENT OF THE CASE

| | |
|---|---|
| **Nature of the case** | Prosecution for murder, under Texas Penal Code section 19.02, and the lesser-included offense of manslaughter, under section 19.04. |
| **District court** | Hon. Deborah Oakes Evans, 369th District Court, Anderson County |

viii

(Case, cont.)

| | |
|---|---|
| **Course and disposition of proceedings** | Mr. Pridgen pled not guilty. RR11:8-9. After the court denied his motion for directed verdict, a jury convicted Pridgen of murder, RR15:65; CR166, and sentenced him to 20 years incarceration, RR15:128; CR163, 164. The court denied Pridgen's motion for new trial, by operation of law. RR13:137; CR170, 174 (presented). |
| | Properly certified, CR157, Pridgen timely appealed. CR177. |
| | The Court of Appeals affirmed in a written unpublished opinion. |

## STATEMENT OF PROCEDURAL HISTORY

| | |
|---|---|
| Date of court of appeals opinion<br>*Pridgen v. State*, 2014 Tex. App. LEXIS 12915 (Tex. App. --- Tyler Dec. 3, 2014, pet. filed) | December 3, 2014 |
| Date motion for rehearing filed | January 20, 2015 (extension granted) |
| Date rehearing motion overruled | January 30, 2015 |

## GROUNDS FOR REVIEW

I. Albeit stating the proper standard, the appellate court erred by actually applying a constitutionally deficient and discredited standard of sufficiency review. (Presented: Pridgen's Jan. 20, 2015, motion for rehearing at 1; Opening Brf. at 8-24; Directed verdict, RR15:65, MNT, RR13:137; CR170-174).

II. In assessing the case for self-defense, the appellate court erred by applying an unconstitutional hindsight viewpoint as to whether deadly force was necessary. (Presented: Pridgen's motion for rehearing at 11; Opening Brf. at 8-24, 25-28; Directed verdict, RR15:65, MNT, RR13:137; CR170-174).

III. The appellate court erred in holding that the decedent's photos of simulated sexual violence were inadmissible. (Presented: Pridgen's motion for rehearing at 13; Opening Brf. at 28-49; Directed verdict, RR15:65, MNT, RR13:137; CR170-174).

## STATEMENT OF FACTS

Robert "Lynn" Pridgen shot and killed his friend, Paul Rohne, in Pridgen's home late at night.

In response to Pridgen's 911 call, police drove to Pridgen's Montalba home in which Rohne, recently divorced, rented a room. RR14:9. They found Rohne slumped on the love seat, dead. RR12:59, 60-62, 88-93, 121-22.

1

Both men were drunk. RR12:95-96, 106-07; 14:35. Alcohol bottles lay throughout the kitchen. RR12:179-80. Rohne's *post-mortem* blood-alcohol content -- 0.33 -- was four times the legal limit. RR12:222. On a 911 call, sounding drunk, Pridgen acted nonchalantly with the operator, explaining that there was a dead man on his couch. RR12:33-39, 47; SX1 (recording).

Nothing was knocked over; there was no sign of any struggle. RR12:139, 181-82; RR14:38, 116-17.When arrested, Pridgen cooperated completely. RR12:100.

At trial Pridgen, 55, a retired TDC prison guard, explained what happened. When his friend Paul Rohne, 40, divorced, Rohne and his ex-wife persuaded Pridgen to rent Rohne a room in Pridgen's Montalba house because of Rohne's heavy drinking. RR14:12-13, 53-55. Otherwise, they feared, Rohne was "going to kill somebody [with his drunk driving] '[i]f he keeps living up there in Tyler.'" RR14:12, 47-48. Pridgen retained the master bedroom and the right to come and go. RR14:13.

Seven months passed without incident. RR14:13-14, 55, 124-25. Pridgen, intending to stay for a couple of days, RR14:14-15, arrived at the Montalba house with some personal items, a case of beer, and an unfinished vodka bottle. RR14:15-16, 59-60, 75, 77. He also brought a 12-gauge shotgun loaded with birdshot, which he used to frighten away feral hogs, and the .45 pistol he regularly carried. RR14:15-16, 59.

Pridgen and Rohne, who often drank together, RR14:16-17, 47-49, 52-53, 57, did so this time. Rohne had his own beer and vodka. RR14:17-18; 71-74; SX82, 23 (photos). They drank and smoked until late, watching TV and discussing fishing, hunting, women, politics and the war. RR14:19, 61-64.

Talk turned to sex. A week earlier, Rohne told Pridgen that he hired a couple of Dallas prostitutes to chain him with leg-irons and hand-cuffs to a bed. RR14:20-21, 66-67, 125. This time, Pridgen asked Rohne to tell details. RR14:21-22, 66-67:

I asked Paul, . . . "Tell me what those whores did to you."

And he said, "Oh, no, I'm not going to." Probably 20 minutes later, I said, "Come on, Paul, tell me what they did to you." And he said, "Oh, you would be surprised." And a short time

3

after that, he said to me, "Lynn, you seem to be showing an awful lot of interest in that. You ought to try it some time." And I said, "You've got to be fucked up." And that was the end of the conversation regarding any of that.

RR14:22, 26, 68-70 (Grammatical marks inserted for clarity. First paragraph outside jury, but before jury on page 68).

Discussion turned to other subjects. RR14:39-40, 70-71.

Pridgen fell asleep around 11 p.m., upright on the love seat. RR14:30-32, 35, 65, 83-84.

Near 1:25 a.m., he awoke to find the much larger Rohne (Rohne was 6', 4-1/4" and weighed 270 pounds; Pridgen is 5', 8" and ninety pounds lighter, RR14:38, 50) in unfastened shorts, pressed against Pridgen, with his left hand rubbing Pridgen's genitals. RR14:30-32, 34, 85-86, 120 (*see* photos SX9, 54). (Rohne had recently shaved his pubic hair (RR12:234-35; SX63 (autopsy report, p. 3).) Rohne cooed, "Don't get up. Just relax and enjoy the pleasure." RR14:30-32, 87, 114.

Frightened, Pridgen leapt up and ran the several steps to the sliding glass door, locked. RR14:31-21, 62-63, 88, 90-92. When he turned, he saw Rohne with a knife in his right hand rising from the love seat, eyes toward him. RR14:33, 92-94, 116, 121, 123. Surmising he was

4

about to be killed (or as he surmised after shooting, handcuffed to a bed and raped), and reacting to his prison-guard training, Pridgen instinctively grabbed the shotgun that was propped by the door, turned, and shot Rohne once center mass. Rohne slumped back onto the love seat, where he died. RR14:35, 39, 40, 46, 94-96, 97-99, 102-03, 113-15, 118, 125, 130.

For some minutes Pridgen, very drunk and dazed, stared at Rohne. RR14:36, 99-101. In retrospect, he was suffering shock. RR14:36, 99, 103, 105. He touched nothing. RR14:37. He called 911. RR14:36, 101.

He had never before seen Rohne's knife. RR14:37. He certainly did not plant it. RR14:37, 116.

Throughout trial, the State argued—incredulously—that Pridgen had killed Rohne as a means to evict him, and then—in the midst of his deep, drunken stupor somehow managed to fabricate self-defense by:

- planting a knife without leaving any trace of his DNA or prints;
- reading a self-defense article from a gun magazine;
- delaying calling 911;
- calling his brother to concoct self-defense;

- falsely claiming attack in the 911 call; and
- falsely claiming that Rohne stood from the love seat when his feet were crossed.

*See supra* and RR15:19-33, 54-64. The State argued that Pridgen made up the account of Rohne's sexual advances. According to the State, Rohne was just a good 'ol boy, like so many of the jurors, and Pridgen's contrary testimony was unbelievable.

To counter these arguments and prove self-defense, Pridgen sought to corroborate his testimony about Rohne's homosexual attack. He offered photographs taken by Rohne himself and found in Rohne's room. The photos cataloged Rohne's (1) practice of simulated sexual violence, (2) use of sexual-fantasy toys, and (3) wearing of sexual role-play clothing—including a "French maid" outfit, suggesting a transsexual lifestyle. (*See* Appendix A-2.) The trial court barred the proof's admission, finding it irrelevant—even under the minimal threshold of Evidence Rule 402—and further finding it outside the allowance, in Rule 404, for proving a victim's character or nature or intent or motive.

Unaware of this critical contextual proof, the jury bought the State's argument and convicted Pridgen, who had no previously criminal history, of murder, rejecting the lesser manslaughter, RR15:65, and sudden passion, and assigned 20 years incarceration, RR15:128; CR163, 164.

## ARGUMENT

Respectfully, the court of appeals' analysis falls short in three critical respects:

- It applies a constitutionally deficient standard of review.

- It misapplies the substantive elements of self-defense.

- And it gets the admission-of-evidence analysis entirely wrong.

**I.    Albeit stating the proper standard, the appellate court erred by actually applying a constitutionally deficient and discredited standard of sufficiency review.** (Presented: Pridgen's Jan. 20, 2015, motion for rehearing at 1; Opening Brf. at 8-24; Directed verdict, RR15:65, MNT, RR13:137; CR170-174).

While saying that murder must be proved and self-defense rejected beyond all reasonable doubt – *i.e.*, to a near-certainty – the court of appeals actually applied a constitutionally prohibited "no evidence" standard. The court searched only for a scintilla or mere modicum of allegedly incriminating evidence and, on finding such proof, called it a day.

This is no mere technicality. When examined under the correct standard of review, the proof here misses the required mark (guilt

beyond reasonable doubt) widely—so widely, in fact, that we can negate the State's burden via a single undisputed fact: Rohne was found clutching a knife, *with no evidence it was planted.*

The scientific proof about the knife – the only probative evidence respecting how it came to be in Rohne's hand – was that it was at least equally probable that Rohne wielded the knife as that he didn't. *See* RR12:224 (Pathologist "I wouldn't even speculate."). The responding officers' comments (about a so-called death grip, etc.) were pure surmise, categorized as non-probative nonsense by the pathologist. RR12:224. This is critical because if Rohne held a knife, the case for murder crumbles, *regardless how the Court might analyze any other fact.*

The State has not even suggested that a murder conviction could be sustained if Rohne wielded the knife. And it cannot. The remaining items of the State's "evidence" (such as the absence of a struggle) either are so flimsy as to be utterly incapable of sustaining any inference at all of murder, or they are so weakly suggestive of it that the unresolvable uncertainty surrounding the knife simply swamps whatever slight

9

effect they otherwise could have. That is, the equal probability that Rohne held the knife defeats the case for murder. Given the abject uncertainty about Rohne's use of the knife, the case for murder is no more probable than the case for self-defense. No *rational* jury, apprised by the pathologist of the probabilities respecting Rohne's use of the knife, could find murder *beyond all reasonable doubt.*

## A. The court of appeals' favored items of proof did not come close to eliminating reasonable doubt.

The reasonable doubt that Rohne's knife established was not defeated by any other proof. For its contrary holding, the appellate court listed nine items of evidence that it says "permit[ed] a rational jury to conclude that deadly force was not immediately necessary," slip op. at 8:

1. Bruises on Rohne
2. Lack of signs of struggle
3. Rohne and Pridgen were intoxicated
4. 911 call
5. Absence of prior confrontations
6. Rohne's mellow demeanor
7. Weapon discharged at elevated position
8. Rohne's position on loveseat with ankles crossed
9. Pridgen's testimony he thought only of Rohne and the knife

Most of these items just are not probative and thus are incapable of sustaining any inference of murder. And not one of these nine items *rationally* contradicts self-defense.

| Evidence | Supposition | Rational Test |
|---|---|---|
| Bruises on Rohne | That Pridgen assaulted him | • The pathologist, who rejected the bruises as proof of an assault by Pridgen, RR12:216, said the bruises could have existed for hours before the shooting. RR12:215-16.<br><br>• Rohne was tall, heavy, and .33 drunk. It is more logical that he stumbled and hit the floor or a cabinet.<br><br>• Pridgen had no bruises himself. It is implausible that the smaller, weaker, sicker man inflicted bruises on the larger, stronger, younger man, but sustained no bruising himself. |
| Lack of signs of struggle | That Pridgen assaulted him | • The far more logical conclusion is that Pridgen did not strike Rohne, there was no struggle and Rohne attempted to seduce Pridgen.<br><br>• The officer testified that a man with a knife could stab a victim quickly unless the victim acted fast. RR13:50-51. |

| Evidence | Supposition | Rational Test |
|---|---|---|
| Rohne and Pridgen were intoxicated | In a stupor, Pridgen decided to murder his friend | • Why would Pridgen, in his own home, shoot a long time friend paying him rent, drunk or not?<br><br>• The logical conclusion is that something unexpected occurred, like attempted seduction, increasing the vital need for Rohne's photos to prove it was so. |
| 911 Call | Pridgen's callousness shows lack of remorse | • The 911 call is at worst a neutral event. Pridgen was drunk and in shock.<br><br>• That he called 911 and remained at the scene supports self-defense. |
| Absence of prior confrontations | That Rohne did not pull knife | • Proof that something astonishing must have occurred to justify a shooting. |

12

| Evidence | Supposition | Rational Test |
|---|---|---|
| Rohne's position on loveseat with ankles crossed | That Rohne was sitting when shot | • As the pathologist confirmed, if Rohne was attempting to stand with a knife, and was shot by a shorter man, gravity and the blast could have pushed Rohne back down into the seat, RR12:239-40, precisely what Pridgen said occurred, RR14:95-96, 119, 121-22.<br><br>• Police officer agreed. RR12:189.<br><br>• Pathologist explained alcohol's destruction of fine motor skills and the ability to walk. RR12:223; *also* officer: 12:180-81. That Rohne stumbled, tripped or crossed his feet is predictable. |
| Pridgen's testimony he thought only of Rohne and the knife, not rape | That Pridgen shot Rohne only because he had a large knife, not for fear of rape | • The knife *alone* was sufficient cause to shoot Rohne. |
| Weapon discharged at elevated position | That Pridgen was standing while Rohne was sitting | • Pridgen admitted standing, and never contended that Rohne was fully standing. Rohne was *rising with the knife*, consistent with self-defense.<br><br>• The knife is the *reason* for self-defense. |
| Rohne's mellow demeanor | That Rohne did not pull the knife on Pridgen | • Again, the appellate court ignored the knife. What is this mellow man doing with a 16-ounce knife? Mellow people kill every day. |

13

Even if these items, taken in hindsight, could establish a modicum of proof that deadly force was not necessary, there is nothing approaching proof *beyond a reasonable doubt* that Pridgen did not in fact reasonably believe such force was necessary *when he pulled the trigger*.

While the appellate court was entitled to presume the jury resolvedy conflicting inferences in favor of the prosecution, *Jackson v. Virginia*, 443 U.S. 307, 326 (1979), this did not authorize the jury to speculate its way into a criminal conviction, any more than it authorized the appellate court to speculate its way to affirmance. And yet that is exactly what has happened. The appellate court has parlayed what is at best a "mere modicum" of proof into the basis for a murder conviction. Constitutional due process forbids this. ***"[I]t could not be argued that such a "modicum" of evidence could by itself rationally support a conviction beyond a reasonable doubt."*** *Jackson*, 443 U.S. at 320 (emphasis added).

Any attempt to rationalize a murder verdict in this case hinges on speculation that the knife was planted – by the same drunk who made

14

the bizarre 911 call the appellate court quotes. Pridgen's reasonable belief that force was necessary can't be disproved beyond all reasonable doubt *if there was a knife*. The only credible evidence respecting the knife (and thus the only proof the jury could credit in its deliberation) shows the presence of a knife was equally probable with its absence. So no rational fact-finder could conclude that murder was proved beyond all reasonable doubt.

**B.    The appellate court's analysis ignored undisputed facts inconsistent with murder.**

The appellate court ignored seven items of incontestable fact:

| Evidence | Proof of Self-Defense |
|---|---|
| The knife | • Officers testified the one-pound knife is a deadly weapon. RR13:42.<br><br>• Only two *equally probable* possibilities exist: (1) Pridgen planted the knife, for which no proof exists, or (2) Rohne had the knife, and Pridgen had the right to shoot him. |
| Pridgen's home | • The shooting was not in a honky-tonk. It was inside Pridgen's *home*, where he had every entitlement to self-protection.<br><br>• It is implausible Pridgen would plot murder in his home, without any motive, but highly likely he would defend himself given a knife threat. |

| Evidence | Proof of Self-Defense |
|---|---|
| The difference in size, age and condition of the two men | • Rohne was *15 years younger*, *8 inches taller*, and *90 lbs heavier* than Pridgen, who suffered from chronic obstructive pulmonary disease, RR14:38; SX53, 63; RR14:38, 50.<br><br>• It is impossible that the much smaller Pridgen inflicted bruises on Rohne while receiving none, without disturbing the room. But it does explain why Rohne selected Pridgen as a victim. |
| Pridgen's prison guard training | • Police verified that officers are trained to fire center of the chest of a knife attacker within 21 feet (now 27-feet) because an attacker at close range can stab faster than officer can fire. RR13:43-44, 46-47, 50-51;12:191-92. Pridgen, a former prison guard, is similarly trained. His instinctive reaction to fire tends to support that he faced a real threat. |
| Officer's testimony that shooting in response to knife wielder within 21 feet is appropriate self-defense | • The police officer, testifying as the State's expert, *confirmed that shooting under these circumstances is self-defense*. RR13:46-47; 50-51. No reasonable juror can set aside that testimony without a valid basis, and none exists. |
| Rohne changed to shorts which he unfastened | • This is unrebutted proof of Rohne's intent. |
| The government's weak attempt at motive – to expel a renter | • No rational person could reasonably believe a homeowner killed a renter to expel him when the renter was a month-to-month tenant. |

A reviewing court *must* consider these facts if it is going to conduct a sufficiency review consistent with the *Jackson* beyond-a-reasonable-doubt standard. The appellate court's refusal to do so proves it applied a "scintilla" or "mere modicum" test: having found 9 items it believes supply a modicum of guilt evidence, the court saw no point in examining any other record facts, no matter how strongly they might point away from murder. Such analysis is constitutionally wrong. ***"[I]t could not be argued that such a "modicum" of evidence could by itself rationally support a conviction beyond a reasonable doubt."*** *Jackson,* 443 U.S. at 320 (citation omitted) (emphasis added); *accord Brooks v. State,* 323 S.W.3d 893, 916 & n.20 (Tex. 2010) (Cochran, J., concurring).

The appellate court's review of cherry-picked evidence—the kind of 'no-evidence' review afforded in civil cases—is precisely barred in this criminal case. *In re Winship*, 397 U.S. 358, 363 (1970) ("[A] person accused of a crime . . . would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could

17

be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case.") (citation omitted).

**II.    In assessing the case for self-defense, the appellate court erred by applying an unconstitutional hindsight viewpoint as to whether deadly force was necessary.** (Presented: Pridgen's motion for rehearing at 11; Opening Brf. at 8-24, 25-28; Directed verdict, RR15:65, MNT, RR13:137; CR170-174).

When it comes to self-defense, the appellate court did not even get the substantive elements right. The nub of the court's analysis, on page eight of its slip opinion, is that certain cherry-picked proof "permit[ted] a rational jury to conclude that deadly force was not immediately necessary ...." Slip op. at 8. But the question is not whether a jury could in hindsight conclude that deadly force was unnecessary. It is whether a jury rationally could conclude to a near certainty that *Pridgen* – clearly drunk and reacting in real time – *could not* have formed a *reasonable belief* that deadly force was necessary, *see* TEX. PENAL CODE ANN. § 9.32, and, further, could conclude that this conclusion was established *so soundly* as to exist beyond any reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[B]y impressing upon the factfinder the need

to reach a subjective state of near certitude of the guilt of the accused, the standard symbolizes the significance that our society attaches to the criminal sanction").

The question, as respects self defense under Penal Code Section 9.32, is what Pridgen himself, *in the critical instant* and faced with the particular circumstances, might reasonably have believed when he pulled the trigger. TEX. PENAL CODE ANN. §9.32(a) (imposing a subjective standard under which deadly force is justified "when and to the degree the actor *reasonably believes* the deadly force is immediately necessary ... to prevent the other's use or attempted use of unlawful deadly force" or "to prevent the other's imminent commission of ... murder, sexual assault, [or] aggravated sexual assault ..."). Under this statute, the appellate court's analysis—which asks whether a detached observer, in the calm and clarity of hindsight, could "conclude that deadly force [in fact] was not immediately necessary," slip op. at 8—is beside the point.

**III. The appellate court erred in holding that the decedent's photos of simulated sexual violence were inadmissible.** (Presented: Pridgen's motion for rehearing at 13; Opening Brf. at 28-49; Directed verdict, RR15:65, MNT, RR13:137; CR170-174).

> "A defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule."
>
> *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001)

Evidence in a criminal trial is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. CR. EVID. 401; *Miller*, 36 S.W.3d at 507. The photos of Rohne (attached to this petition) clearly meet this test and thus are admissible under Evidence Rule 402. TEX. R. CR. EVID. 402 ("All relevant evidence is admissible, except as otherwise provided by ... these rules .... Evidence which is not relevant is inadmissible.").

### A. *The photos are clearly relevant to Pridgen's statutorily authorized defense.*

> "The photographs, I'll concede, there are some images of sexual violence. We are dealing with bondage and S&M nature, where people are in a superior position and an inferior position, where someone was being sometimes violently abused, and someone was receiving that violent abuse."
>
> Prosecutor, RR2:11-12.

The photos—which depict Rohne role-playing bizarre, violent sexual fantasies—directly addressed the statutory defense jurors were charged to decide: "[a] person is justified in using deadly force ... to prevent the other's imminent ... sexual assault or aggravated sexual assault." Jury Charge, CR152-53. The government conceded this indirectly at trial, stating that the photos included "images of sexual violence" and "bondage." RR2:11-12. The photos counter the government's contention that Pridgen fired to evict a tenant. They go a long way to answering the prosecutor's rhetorical question: "And who knows what went on that night?" RR15:62-63. And, of course, the photos are vitally necessary to rebut the government's cries that

Pridgen planted the knife. If the photos were not admissible already, the government arguments would make them admissible. *See Cooper v. State*, 95 S.W.3d 488, 491 (Tex. App.---Houston [1st Dist.] 2002, no pet.) (The State's counter arguments alone can make evidence Rule 401 relevant).

### B. The photos are highly probative of self-defense.

To be probative, "the proffered evidence must tend to make the existence of the fact 'more or less probable than it would be without the evidence.'" *Miller*, 36 S.W.3d at 507. So what facts are made more or less probable by the photos?

- That Rohne was capable of sexual assault.

- That Rohne had a knife.

- That Rohne grabbed Pridgen's genitals.

- That Rohne whispered ""Don't get up. Just relax and enjoy the pleasure."

- That Rohne's bruises may have been self-inflicted when using his sex toys (see his chains and clamps, App. A-2).

- That Rohne and Pridgen's lack of prior confrontation is consistent *and explained* with the secret and threatening activities Rohne knew of *but Pridgen did not*.

# Jurors

**Rule 404(a)
(Character Trait)**

**Rule 404(b)
(Motive, Plan, Intent)**

**Self Defense
TPC Art 9.31**

## Rule 402 Relevance Threshold



Rohne's Photos, Toys and Equipment

### C. The photographs speak loudly for themselves and 12 citizen jurors should be permitted to listen.

Remarkably, the appellate court erected an artificial barrier to sexual assault evidence: the evidence must be of a *homosexual* nature when the victim and perpetrator are of the same gender. *See* slip op. at 10 ("There are no images contained in Defense exhibits 1 through 27 that show Rohne acting as an aggressor or engaging in homosexual conduct.") This is not only wrong—at least one photo (see App. A-2) showed the giant Rohne cross-dressing in a maid costume—but is a violation of the Equal Protection Clause of the Fourteenth Amendment. *See Craig v. Boren,* 429 U.S. 190 (1976).

Whether Rohne is homosexual is beside the point. Who is to say that Rohne did not see this encounter with Pridgen as a fresh opportunity to branch out from female prostitutes to male participants? What rational distinction can (or should) be made between simulated violence against women and men, censuring the one, and sanctioning the other?

Further, as the government conceded, RR12:11-12, the photos do show Rohne as an aggressor:

- 7 of the photos (*see* App. A-2) show Rohne inflicted pain on himself with a genital clamp (proof his bruises may be self-inflicted);

- 3 photos show that Rohne used restraint devices to simulate bondage and pain.

- And other photos (DX7 and DX12) (*see* App. A-2) display rope, penis clamps, handcuffs and chains --- designed to inflict pain and recognized as deadly weapons. *See Hill v. State*, 913 S.W.2d 581, 583 (Tex. Crim. App. 1996) (chain is deadly weapon); *Castro v. State,* 2006 Tex. App. LEXIS 704, 7 (Tex. App. --- Houston [1st Dist.] Jan. 26, 2006, no pet.) (rope is deadly weapon); *Smith v. State*, 186 N.C. App. 57 (N.C. App. 2007) (handcuffs as deadly weapon).

### D. *The appellate court undertook its own impermissible fact-weighing and credibility assessment.*

The appellate court wrote, "Appellant testified that he shot Rohne because he 'was in fear of his life and thought Rohne was going to kill him.' But as the sole judge of witness credibility and the weight to be given their testimony, the jury was free to disbelieve Appellant's contention that he feared for his life." Slip op. at 8. But the court withheld an entire class of evidence relevant to whether Pridgen in fact feared for his life. The photos were unique and would have been critical to the "witness credibility" and "weight" determinations on which the

appellate court hangs its decision. *See Brooks*, 323 S.W.3d at 911 (appellate court cannot sit as 13th juror).

The exclusion of the photos was more than error; it denied critical constitutional rights. "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky,* 476 U.S. 683, 690 (1986). As this Court explained in *Miller*, exclusions of evidence under Rules 401 and 402 implicate the Due Process and Confrontation Clauses of the Sixth and Fourteenth Amendments. *See Miller*, 36 S.W.3d at 506. By dismissing the photographs of Rohne on mere relevance grounds and refusing retrial, the court of appeals violated Pridgen's right to present a complete defense, in contravention of *Holmes v. South Carolina,* 547 U.S. 319 (2006), and the Due Process and Confrontation Clauses of the Sixth and Fourteenth Amendments. *See California v. Trombetta*, 467 U.S. 479, 485 (1984).

## CONCLUSION

A former prison official with no criminal record, standing in his own home, shot a transsexual who pulled a knife and grabbed his

genitals with plans for simulated or actual rape. Every rational Texan would say this is fair reason for self-defense. When jurors see the photos that corroborate Pridgen's explanation and Rohne's misconduct, they will acquit Pridgen. The court of appeals should not stand in the way of the most important right we have, to have accusations decided by a jury of peers with full presentation of evidence. The Court should grant review.

## RELIEF SOUGHT

Pridgen seeks discretionary review followed by acquittal or new trial. Respectfully submitted this 6 day of April 2015,

By: */s/ James W. Volberding*

**JAMES W. VOLBERDING**
SBN: 00786313

First Place
100 E. Ferguson Street
Suite 500
Tyler, Texas 75702
(903) 597-6622
(866) 398-6883 (fax)
*e-mail: james@jamesvolberding.com*

Attorney for Appellant,
Mr. Robert Lynn Pridgen

26

## CERTIFICATE OF COMPLIANCE

I certify that this document is written in 14-point font and contains 4,238 words, as measured from the Statement of Facts through the Relief Sought, plus about 200 words in pages containing exhibits.

/s/ James W. Volberding

_____

**James W. Volberding**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this pleading has been delivered this 6 day of April 2015 to:

Anderson County District Attorney
500 N. Church Street, Room 38
Palestine, TX 75801

State Prosecuting Attorney
P. O. Box 13046
Austin, Texas 78711-3046

by the following means:

_____  By U.S. Postal Service Certified Mail, R.R.R.
_X___  By First Class U.S. Mail
_____  By Special Courier _____
_____  By Hand Delivery
_____  By Fax before 5 p.m.
_____  By Fax after 5 p.m.
_____  By email.

/s/ James W. Volberding

_____

**James W. Volberding**

## **APPENDIX**

Tyler Court of appeals opinion
   *Pridgen v. State*, 2014 Tex. App.
   LEXIS 12915 (Tex. App. --- Tyler
   Dec. 3, 2014, pet. filed) ......................................................... A-1

Denied photographs of Rohne ................................................. A-2

# A-1
# Opinion of the Court of Appeals

# NO. 12-13-00136-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ROBERT LYNN PRIDGEN,* *APPELLANT* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Robert Lynn Pridgen appeals his conviction for murder. He raises three issues on appeal. We affirm.

### BACKGROUND

An Anderson County grand jury indicted Appellant for the murder of Paul Rohne alleged to have occurred on or about January 27, 2009. It is undisputed that Appellant fired the shot that led to Rohne's death, but he contends that he was acting in self-defense.

Appellant pleaded "not guilty," and his first trial resulted in a hung jury. In his second trial, the jury rejected Appellant's claim of self-defense, found him guilty, and assessed punishment at twenty years of imprisonment. This appeal followed.

### SUFFICIENCY OF THE EVIDENCE

In his first two issues, Appellant contends that the evidence is legally and factually sufficient to support his "affirmative defense of self-defense." Appellant contends that he is entitled to an acquittal because the evidence established his "affirmative claim of self-defense . . . as a matter of law."

**Standard of Review**

Appellant contends that the standard of review in this case is governed by the holding in *Matlock v. State*, 392 S.W.3d 662 (Tex. Crim. App. 2013), but his reliance on *Matlock* is misplaced. In *Matlock*, the court of criminal appeals reaffirmed that the civil standards of review apply when an appellant raises a legal or factual sufficiency challenge to a jury's adverse finding on his affirmative defense. *See Matlock v. State*, 392 S.W.3d 662, 668–70 (Tex. Crim. App. 2013). This is because, in a criminal case, a defendant must prove an affirmative defense by a preponderance of the evidence—the civil burden. *See id.*

Under *Matlock*, the standard for reviewing the legal sufficiency of the evidence supporting an adverse finding on an affirmative defense is as follows:

> When an appellant asserts that there is no evidence to support an adverse finding on which [he] had the burden of proof, we construe the issue as an assertion that the contrary was established as a matter of law. We first search the record for evidence favorable to the finding, disregarding all contrary evidence *unless a reasonable fact[]finder could not*. If we find no evidence supporting the finding, we then determine whether the contrary was established as a matter of law.

*See id.* at 669 (citations omitted). When examining whether an appellant established his factual sufficiency claim, the appellate court views the entirety of the evidence in a neutral light, and may sustain a factual sufficiency challenge on appeal

> only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased.

*See id.* at 671 (citing *Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990) (en banc)). However, the standards set forth in *Matlock* do not apply to the current case because self-defense is a defense rather than an affirmative defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).

The issue of self-defense is a fact issue to be determined by the jury, and a jury's verdict of guilt is an implicit finding that it rejected a defendant's self-defense theory. *Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991) (en banc). In reviewing the sufficiency of the evidence to support the jury's rejection of self-defense, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have

2

found the essential elements of the offense and also could have found against the defendant on the self-defense issue beyond a reasonable doubt. *See id.* at 914 (stating "we look not to whether the [s]tate presented evidence which refuted appellant's self-defense"); *Sutton v. State*, No. 12-04-00150-CR, 2005 WL 3725087, at *3 (Tex. App.—Tyler 2006, pet. ref'd) (mem. op., not designated for publication). Under this standard, we do not conduct a separate factual sufficiency review. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Accordingly, we address Appellant's second issue (legal sufficiency) but not his first (factual sufficiency). *See* TEX. R. APP. P. 47.1.

**Applicable Law**

The use of deadly force is justified as self-defense under certain circumstances. *Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011). An actor is justified in using deadly force against another if (1) the actor would be justified in using force under Section 9.31 of the penal code, and (2) when and to the degree the actor reasonably believes that deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force, or to prevent the other's imminent commission of murder, sexual assault, or aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 9.32(a) (West 2011).

Self-defense is an issue to be determined by the jury. *Saxton*, 804 S.W.2d at 913. "Defensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the State's evidence insufficient since the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence." *Id.* at 914.

When a defendant raises self-defense, he bears the burden of producing some evidence to support his defense. *See Zuliani*, 97 S.W.3d at 594 (citing *Saxton*, 804 S.W.2d at 913); *see also McCurdy v. State*, No. 06-12-00206-CR, 2013 WL 5433478, at *3 (Tex. App.—Texarkana Sept. 26, 2013, pet. ref'd) (mem. op., not designated for publication). Once the defendant produces some evidence supporting his defense, the state then bears the burden of persuasion to "disprove the raised defense." *Zuliani*, 97 S.W.3d at 594; *see also Tidmore v. State*, 976 S.W.2d 724, 729 (Tex. App.—Tyler 1998, pet. ref'd) (state does not have burden of producing evidence to affirmatively refute self-defense). The burden of persuasion does not require the production of evidence; it requires only that the state prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594.

3

**The Evidence**

It is undisputed that Appellant shot and killed Paul Rohne. Appellant called 911 at approximately 1:25 a.m. on January 27, 2009. The following discourse took place between Appellant and the 911 dispatcher:

> Dispatch: Anderson County 911.
>
> Appellant: Yeah, how you doin' tonight?
>
> Dispatcher: Sir, do you have an emergency?
>
> Appellant: Yeah I do, I got a dead man on my couch. Um.
>
> Dispatcher: You have a dead man on your couch?
>
> Appellant: Yeah, I just shot him.
>
> Dispatcher: You shot him?
>
> Appellant: Yes I did.
>
> Dispatcher: What's your name sir?
>
> Appellant: Lynn Pridgen.
>
> Dispatcher: And who is the man you shot?
>
> Appellant: Uh, Paul Rohne.
>
> Dispatcher: And why did you shoot him?
>
> Appellant: Uh, because he was attacking me. But, you know, all this stuff needs to be hashed out in court. But I'm telling you I got a dead man on my couch and I'd like a[n] ambulance or something to come get him.
>
> Dispatcher: Okay, hold on for me just a second sir, okay?
>
> Appellant: Yeah.

At approximately 1:30 a.m., law enforcement arrived at the residence. By that time, Appellant's 911 call had ended. The 911 dispatcher called Appellant back and informed him that law enforcement was requesting that he exit his residence. In concluding this phone call with the dispatcher, Appellant said, "Cool deal[.] You're doin' good girl. Bye."

Sergeant Ronnie Foster was among the first officers to enter the residence. He testified that there did not appear to be any signs of struggle, that the temperature inside the residence was

68 degrees, and that Rohne was deceased. Rohne was sitting on a loveseat, slumped over, with his ankles crossed. He had a "tight" grip on the side of his glasses with his left hand and "no grip at all" on a knife that was in his right hand.

Deputy Michael Mitchell arrived at Appellant's residence at the same time as Sergeant Foster. When they arrived, they handcuffed Appellant, and placed him in Mitchell's patrol car. Mitchell testified that Appellant had difficulty standing, his speech was slurred, and he smelled heavily of alcohol. He testified that Appellant was intoxicated, which Appellant confirmed when he testified that he was "drunk" the night of the shooting.

Paramedic Matthew Corbin arrived at Appellant's residence at approximately 1:50 a.m. Corbin confirmed that Rohne was dead and testified that he was cool to the touch, and his skin was pale and mottled.[1] Corbin testified that a large amount of blood was "all over the place," and that blood was "already coagulating" when he arrived.

The officers collected various items from the scene, including the knife in Rohne's right hand and a shotgun that they believed was used in the shooting. They swabbed the knife and shotgun for forensic testing. The trigger of the shotgun contained Appellant's DNA, but no DNA profiles could be extracted from the knife. No usable fingerprints were obtained from the gun or the knife.

### *Cause and Time of Rohne's Death*

Dr. Delbert Van Deusen, a forensic pathologist, performed an autopsy and determined that Rohne's cause of death was a shotgun wound to the chest. He testified that Rohne had a blood alcohol concentration of .33, "a rather obvious bruise on the . . . right side of his face[,] multiple bruises on his arms, a pretibial area on his legs[, and] of course, the shotgun wound to the chest." The bruising occurred prior to Rohne's death, Dr. Van Deusen explained, because bruising requires blood pressure. When Rohne was shot, he instantly lost blood pressure because the gunshot went through his heart. Dr. Van Deusen described the bruising on Rohne's arms as "defense wounds" because their pattern indicated that they were incurred from a person attempting to protect his face or body. He agreed that an equally consistent explanation for the cause of Rohne's bruising was falling.

Dr. Van Deusen testified that Rohne's gunshot wound was front to back, downward, and slightly left to right. He described the wound as "more of a distant gunshot wound." He

---

[1] Corbin explained that "mottled" meant Rohne's skin appeared, pale, white, and blotchy.

explained that the firearm was discharged approximately eight to ten feet away and was positioned higher than Rohne when it was discharged. Dr. Van Deusen did not know how long Rohne had been dead when the photographs of Rohne (specifically State's exhibits 10, 48, and 51) were taken. Hypothetically, he estimated that if there was some mottling of the skin, the body was cool to the touch, and there was coagulation of blood, a person could have been dead for "two or three hours."[2]

Dr. Van Deusen explained the differences between liver mortis and rigor mortis because the testimony had shown that some of the officers believed Rohne's loose grip on the knife was due to the fact that the knife was staged. Sergeant Foster testified that he expected Rohne to have a "death grip" on the knife. Investigator Larry Warrick testified that he thought the positioning of the knife was odd because Rohne's hand was "cupping" the knife instead of holding it, and the knife fell out of Rohne's hand after Warrick barely touched it.

Dr. Van Deusen testified that there was not anything significant about Rohne's left hand having a stronger grip on his glasses and his right hand being more loose and open around the knife. He was asked, "You can't say whether [Appellant's fingers were] like that and opened up, or whether it was closed, or whether it was never closed, or—I mean, either hand?" Dr. Van Deusen replied, "I wouldn't even speculate."

*Appellant's Testimony*

Appellant is a retired, fifty-nine-year-old man. He is five feet, eight inches tall, weighs 180 pounds, and has chronic obstructive pulmonary disease (COPD). He has worked as a security officer, and as a sergeant and maintenance employee for the Texas prison system. Appellant met Rohne sometime before 2001, and Appellant began renting part of his house to Rohne approximately seven months before the shooting.[3]

Appellant testified that he originally did not want to rent his house, but after several months of being "begged" by Rohne and Rohne's ex-wife, he finally agreed. Appellant testified, "[B]oth he [(Rohne)] and Carla [(Rohne's ex-wife)] stated [']If I keep living up here,['] – or, Carla would say [']If he keeps living up there in Tyler, he's going to kill somebody.[']" Because Appellant occasionally needed the use of his Bois D' Arc house, his agreement with Rohne was

---

[2] State's exhibits 10, 48, and 51 are photographs of Rhone from different angles as he was found at Appellant's residence. The record is silent as to the time the photographs were taken.

[3] Appellant's primary residence is in Neches, Texas. The house where the shooting occurred is located in Bois D'Arc, a community near Montalba.

6

that he would continue to have use of the master bedroom and bathroom, he could stay at the house whenever he desired, and Rohne was to have use of the rest of the house.

Appellant described Rohne as a much younger, very large man—over six feet tall and weighing about 270 pounds. Rohne was one of Appellant's "drinking buddies." Appellant testified that Rohne generally had a mellow demeanor when he was drinking but sometimes became depressed and talked about killing himself. Rohne and Appellant never had any disagreements, fights, or arguments prior to January 26, 2009.

Appellant and Rohne talked on the phone almost every night. Appellant testified that he was sure he and Rohne had talked about their "escapades of the past a couple of weeks" before the shooting. But it was not until the week before the shooting that Rohne told Appellant that he hired prostitutes in Dallas to handcuff and leg iron him to a bed.

On January 26, 2009, at approximately 4:00 p.m., Appellant arrived at his Bois D' Arc house. Once he arrived, he and Rohne began drinking alcohol. During the night, Appellant inquired about Rohne's experience with the Dallas prostitutes. Because Rohne had not responded to his previous questions, Appellant continued to prod Rohne for details and stated, "Come on, Paul, tell me what those whores did to you." Rohne responded, "Oh, you'd be surprised." Later that night, Rohne commented on Appellant's interest about the Dallas prostitutes and said, "Lynn, you seem to show a lot of interest in that. You ought to try it sometime."

Sometime after 10:00 p.m., Appellant fell asleep on the loveseat and was awakened by Rohne "rubbing my genitals" with his left hand. Rohne told Appellant, "Don't get up. Just relax and enjoy the pleasure." Approximately one second after Rohne's statement, Appellant "jumped up," and ran to the sliding glass door, but the door was locked. When Appellant turned and looked back at Rohne, he saw that Rohne had a knife in his hand and "was getting up, and coming towards me." When he saw Rohne standing with the knife, Appellant "thought something bad was fixing to happen" to him. Appellant explained that he felt that he had been sexually assaulted, and the thought running through his mind was that Rohne "was going to rape me, handcuff me up to a bed. He was just running fast." Appellant shot Rohne as he was "in the process of standing up," and testified that he shot Rohne because "I was in fear of my life. I thought he was going to kill me." Appellant testified that one of the photographs of Rohne

7

showed that his shorts were unbuttoned, but he did not state whether he was aware of this when he shot Rohne.

On cross examination, Appellant demonstrated how Rohne was positioned on the love seat when he woke up. Appellant confirmed that when he was awakened by Rohne's touching, he did not see a knife and had no fear of a knife. But he confirmed that when he shot Rohne, he was thinking only about Rohne and the knife. Appellant testified that "[t]he knife was the immediate danger." Appellant did not know how Rohne received the bruises on his face and arms, and maintained that he had not fought with Rohne that evening.

**Discussion**

To accept Appellant's claim of self-defense, the jury had to find that Appellant was justified under Section 9.31 of the penal code in using deadly force against Rhone, and that Appellant reasonably believed the deadly force was immediately necessary to protect him against Rhone's use or attempted use of deadly force, or to prevent Rhone's imminent commission of sexual assault. *See* TEX. PENAL CODE ANN. § 9.32(a).

Appellant testified that he shot Rohne because he "was in fear of his life and thought Rhone was going to kill him." But as the sole judge of witness credibility and the weight to be given their testimony, the jury was free to disbelieve Appellant's contention that he feared for his life. *See Saxton*, 804 S.W.2d at 914. Although Rohne had bruising on his face and arms, the living room showed no signs of struggle, and Rohne's gunshot wound showed that the weapon was discharged from an elevated position. This evidence, when viewed in light of Appellant's and Rhone's intoxication, Appellant's 911 phone calls, Rohne's mellow demeanor, the absence of prior confrontations between Rohne and Appellant, and Rohne's position on the loveseat with his ankles crossed, permits a rational jury to conclude that deadly force was not immediately necessary to protect Appellant from Rohne's alleged use or attempted use of unlawful deadly force. *See* TEX. PENAL CODE ANN. § 9.32(a)(2)(A); *Saxton*, 804 S.W.2d at 914.

Appellant testified further that Rhone had rubbed his genitals and he thought Rhone "was going to rape" him. But Appellant contradicted his prior testimony on cross examination when he testified that he was thinking only about Rohne and the knife when he shot Rohne. This evidence permits a rational jury to conclude that it was not reasonable for Appellant to believe that deadly force was immediately necessary to prevent the imminent commission of a sexual assault. *See* TEX. PENAL CODE ANN. § 9.32(a)(2)(B),(b)(10(c); *Saxton*, 804 S.W.2d at 914.

After viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found the essential elements of the offense and also found against Appellant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914. Therefore, the evidence is sufficient to support the jury's implicit rejection of Appellant's self-defense claim. *See id.* Accordingly, we overrule Appellant's second issue.

**EXCLUSION OF EVIDENCE**

In his third issue, Appellant contends that the trial court abused its discretion by excluding evidence that would have corroborated his testimony. He contends that the excluded evidence proves "Rohne was an aggressive bisexual hungry to role play bizarre sexual encounters including rape, bondage, and torture."

## Standard of Review

A trial court has considerable discretion in determining whether to exclude or admit evidence. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (en banc) (op. on reh'g); *State v. Dudley*, 223 S.W.3d 717, 724 (Tex. App.—Tyler 2007, no pet.). Absent an abuse of discretion, we will not disturb a trial court's decision to admit or exclude evidence on appeal. *Dudley*, 223 S.W.3d at 724 (citing *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005)). Under this standard, we will uphold a trial court's evidentiary ruling as long as the ruling is within the "zone of reasonable disagreement." *Id.*

## Applicable Law

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Evidence that is not relevant is inadmissible. TEX. R. EVID. 402.

In determining whether evidence is relevant, it is important that courts examine the purpose for which the evidence is being introduced. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009) (citations omitted). It is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved. *Id.*

An alleged victim's prior specific acts of violence are admissible "only to the extent that they are relevant for a purpose other than character conformity." *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). In the context of proving the deceased was the first aggressor,

9

violent acts are relevant apart from showing character conformity by demonstrating the deceased's intent, motive, or state of mind. *Id.* Before a specific, violent act is introduced, there must be some evidence of a violent or aggressive act by the deceased that tends to raise the issue of self-defense that the specific act may explain. *Id.* at 761. Prior specific acts of violence relevant to the ultimate confrontation may be offered to show a deceased's state of mind, intent, or motive, and the specific violent acts need not be directed at the defendant to be admissible. *Id.* "As long as the proffered violent acts explain the outward aggressive conduct of the deceased at the time of the killing, and in a manner other than demonstrating character conformity only, prior specific acts of violence may be admitted. . . ." *Id.* at 762.

**Discussion**

The only contested issue at trial was whether Appellant shot Rohne in self-defense. Appellant testified that Rohne was the first aggressor because Rohne rubbed Appellant's genitals, told him to relax and enjoy the pleasure, and then began to stand up from the loveseat holding a knife in his hand. The trial court excluded twenty-seven exhibits that Appellant argues would have increased the probability that Rohne (1) was an aggressive transvestite, (2) who fondled Appellant's genitals, (3) told Appellant to relax and enjoy the pleasure, and (4) whose next steps "apparently were to force or role play [Appellant's] rape with a knife (or perhaps [Appellant's] involuntary, forced rape of Rohne)."

Defense exhibits 2 through 27 are photographs of items found inside Rohne's room. The items include women's shoes, women's undergarments and other clothing, and various "sex toys." Defense exhibit 1 is a disc containing the results of a forensic search of Rohne's laptop. The disc contains several different files that include links to websites which purport to contain sexually explicit material, pornographic images of male genitalia, pornographic images of women, and pornographic images of Rohne. The pornographic images of Rohne showed him wearing women's clothing, being subjected to sexual acts with women in which he was in a submissive position, or wearing other items with his genitals exposed. There are no images contained in Defense exhibits 1 through 27 that show Rohne acting as an aggressor or engaging in homosexual conduct.

In order for Defense exhibits 1 through 27 to be admissible, they must explain the outward aggressive conduct of Rohne at the time he was shot. *Id.* at 762. The evidence at trial does not show that Rohne was wearing any of the items depicted in the proffered photographs, or

that Rohne was attempting to use any of the items on Appellant. No knives are shown to have been found in Rohne's room, and none of the images of Rohne show him engaging in homosexual activity or other activity in which a knife is being used. Accordingly, there is no direct or logical connection between these exhibits and Appellant's contention that he shot Rohne in self-defense. *See Layton*, 280 S.W.3d at 240.

Although the items found in Rohne's bedroom and laptop show that Rohne engaged in unorthodox sexual practices, they do not make more or less probable the fact that Appellant was in fear for his life when he shot Rohne or that he believed Rohne was going to rape him. *See id*. Moreover, Defense exhibits 1 through 27 do not demonstrate Rohne's state of mind, intent, or motive on the night of the shooting. *See Torres*, 71 S.W.3d at 760–62. Thus, the exhibits are not relevant apart from showing character conformity. *See* TEX. R. EVID. 401; *Torres*, 71 S.W.3d at 760. The trial court did not abuse its discretion by excluding Defense exhibits 1 through 27. *See* TEX. R. EVID. 402; *Montgomery*, 810 S.W.2d at 391. Accordingly, we overrule Appellant's third issue.

## DISPOSITION

Having overruled Appellant's second and third issues, we ***affirm*** the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered December 3, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

DECEMBER 3, 2014

NO. 12-13-00136-CR

**ROBERT LYNN PRIDGEN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 3rd District Court

of Anderson County, Texas (Tr.Ct.No. 29956)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*